(No. 14006.—Reversed and remanded.)

THE UNION COLLIERY COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JOHN BANISKY, Defendant in Error.)

*Opinion filed October 22, 1921.*

1. WORKMEN'S COMPENSATION—*when the employer should be allowed credit for compensation paid.* Where it is stipulated before the Industrial Commission that the employer has paid a certain sum as compensation he should be allowed credit for the amount paid in the order of the commission for an award for temporary total incapacity.

2. SAME—*when award for permanent partial incapacity must be set aside.* An award for permanent partial incapacity must be set aside where the evidence furnishes no basis on which to estimate the amount of such an award, even though the evidence sustains the portion of the award made for total temporary incapacity.

WRIT OF ERROR to the Circuit Court of Franklin county; the Hon. JULIUS C. KERN, Judge, presiding.

GEORGE W. DOWELL, for plaintiff in error.

W. P. SEEBER, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

The Industrial Commission made an award of compensation in favor of John Banisky, defendant in error, against the Union Colliery Company, plaintiff in error, for accidental injuries received by Banisky while employed in the coal mine of plaintiff in error. His compensation was fixed at $12 per week for a period of eight weeks for temporary total incapacity and $6.85 per week for 407 weeks for partial permanent incapacity, payments to begin May 20, 1919. The award was confirmed by the circuit court of Franklin county on review by writ of *certiorari.* A writ of error was granted by this court.

It was stipulated by the parties before the Industrial Commission that petitioner was in the employ of the respondent on May 13, 1919, the day he was injured; that both parties were operating under the Compensation act; that the wages of petitioner for one year preceding his injury were $950 and his weekly wage $18.28, and that petitioner has been paid the sum of $94 as compensation by plaintiff in error.

Two of the contentions made by plaintiff in error are, (1) that the judgment of the court should be reversed for failure of the commission to allow plaintiff in error a credit on the award of $94 as compensation paid to Banisky; and (2) because the competent evidence in the record does not sustain the award of $6.85 for partial permanent incapacity.

The first contention of plaintiff in error must be sustained. The order of the commission, confirmed by the court, fails to give any credit for the amount of compen-

sation paid to the defendant in error. Under the stipulation of the parties it should have been credited against the award made for temporary total incapacity.

It is recited in the award of the Industrial Commission that the $6.85 per week was allowed for partial permanent incapacity, for the reason that as the result of the accidental injury the applicant is partially incapacitated from pursuing his usual and customary line of employment, the $6.85 per week being fifty per cent of the difference between what the applicant was able to earn prior to his injury and the amount he is able to earn now in some suitable employment. We are unable to find any proper basis for this conclusion of the commission in the record. The testimony of defendant in error given on May 26, 1920, is, in substance, that he was injured in plaintiff in error's coal mine by rock falling on him and breaking a bone in the back of his neck; that three days afterwards he was examined by the company's physician and told to go to work; that later he went to a hospital in Belleville, Illinois, and was there treated for his injury until July 15, 1919, when he was discharged from the hospital; that he commenced work again at the plaintiff in error's mine July 17, 1919, and worked until August 4, 1919, at shift work until he was fired or discharged; that he again began work at the mine at White Ash on September 8, 1919, and worked off and on at that mine until May 1, 1920, but does not know how many days he worked at White Ash but estimates about seven days. He also testified that he quit work at White Ash because his neck hurt him so bad that he could not work; that the pain was awful and he had the pain all the time, and that when he undertakes to work it gives him the headache or a sharp pain and when he stoops over in his work it makes him blind. It does not appear from his testimony, or from any other testimony in the record, what character of work he performed in plaintiff in error's mine when he returned to work there or how much wages he received for such work.

The record simply shows that he worked at shift work and that he was not satisfied with that kind of work. The testimony does not show what kind of work he performed at the mine at White Ash or what he was paid there for his work. On cross-examination, on being asked where he was then working, his answer was, "at White Ash."

· Dr. H. Frein, who treated Banisky at the hospital in Belleville, gave him two certificates, the first being dated July 15, 1919, in which he certified that Banisky had a fracture of the third cervical vertebra May 13, 1919, and "is now able to go to work." On August 5, 1919, Dr. Frein certified that Banisky had been under his treatment for a fracture of the spinous process of the third vertebra from May 31 to July 17, 1919. It further appears from the record that the Industrial Commission sent defendant in error on June 10, 1920, to Dr. T. B. Magnuson, medical director for the commission, for a physical examination. In the report of the medical director he states that Banisky complained of pain in the left side of his neck, caused by stones falling from the roof of the mine on his head and neck while stooping and shoveling, and that the pain is constant, and that sometimes it shifts to the right side of the neck when he works hard. The doctor then states that the point of greatest tenderness is above the fifth or sixth cervical; that his head turns normally to the right and within ten degrees of normal to the left but that he complains when it comes to within ten degrees of normal on the left rotation; that his flexion is normal, hyper-extension is about fifteen degrees less than normal, reflexes in knees and eyes normal, Rombert's sign negative, and that elbow jerks are normal; that the X-ray pictures of defendant's neck show no change in the vertebræ, either as to injury or disease. The doctor's final conclusion was that it is possible that the ligaments at the base of defendant in error's neck, on the left side, were strained at the time of injury and are still sore and swollen; that it is very difficult to deter-

mine from these cases exactly what the injury is, as the injury is deep in the neck and covered by several layers of muscles; that in view of the symptoms of the defendant in error, which are constant and do not appear to be hysterical or neurotic in any way, he personally gave the defendant in error the benefit of the doubt and believes that he does have pain, and also believes that in time this pain will clear up. He recommended exercise, and stated that while it would give him some pain he thinks it will do him good to work, and that he will have considerably more pain in a stooping position than in an upright position, and that he should not use too many violent muscular movements.

Two physicians, Dr. Gray C. Briggs, Roentgenologist of the College of Physicians and Surgeons at St. Louis, and Dr. F. Reder, of St. Louis, testified for plaintiff in error. The testimony of the former is, in substance, that he made the X-ray pictures of defendant in error in December, 1920, and that they are true, perfect and correct pictures of his head and neck; that he has no evidence of fracture or of dislocation and no sign of any pathology with one exception: a spur of bone, similar to a rooster's spur, growing down from the back part of his head, which is not due to injury to head or neck but caused by rheumatism. The testimony of Dr. Reder is, in substance, that upon his physical examination of Banisky he found him complaining of pain in his back and neck and that he found no real cause for such pain; that he was well nourished, well proportioned, stockily built, heavy, weight and height corresponding normally, and looked like a man in good health. He examined him thoroughly, and came to the conclusion that Banisky thought he was suffering, and that the belief actually existed in his mind that he was suffering from an injury but that his ailment is what is known as traumatic neurosis. The sum and substance of his whole testimony is that the defendant in error shows no sign of any injury at all but that he honestly believes that he is injured, but

that it is a mere existence in his mind, without actual foundation in fact.

This record furnishes a good example of how our best physicians disagree in many instances in their conclusions of the ailments or want of ailments that a patient may have, after a thorough examination. The question, however, of the weight of the evidence is not one with which this court can deal. The Industrial Commission found that the defendant in error was actually injured and that he was entitled to the compensation awarded him. Its finding is based upon competent testimony in part, and the first part of the award is well supported by the evidence in the record. The second part of the award is not so supported. The testimony is sufficient to show that defendant in error is still suffering from the injury and may be entitled to further compensation than was allowed for temporary total incapacity. The evidence, however, furnishes absolutely no basis for a finding as to what per cent of incapacity he still has. It cannot be determined from the evidence how much less, if any, he would now earn in some suitable occupation than he earned in his former occupation, for the reasons that the record does not show the wages paid him after he commenced work in July, 1919, and the amount of such labor he is able to perform. The evidence also fails to show, either by the testimony of defendant in error himself or of any expert physician, that he is permanently injured or permanently incapacitated in any degree for work. The inference from the testimony of all the physicians is that he will recover in time, if he has suffered any injury.

For the reasons aforesaid the judgment of the circuit court is reversed and the award set aside, and the cause is remanded for such further proceedings as may be authorized by law.   *Reversed and remanded.*